20-2874 from the District of Minnesota. Joyce Vallone et al. v. CJS Solutions Group. Good afternoon, Mr. Snodgrass. We'll hear from you first. Good afternoon, your honors. My name is Joe Snodgrass, and I represent the employees in this case, Joyce Vallone, Erasmus Aikagor, and nine other former employees of CJS Solutions. And CJS is also known as HCI Group, and I'll be referring to the defendant as HCI throughout the course of this oral argument. I'm first going to focus most of my time on the out-of-town travel issue because the outcome of the travel time legal dispute will dictate whether this court gets into or needs to resolve issues concerning personal jurisdiction defense. Who was the judge that asked you the first question? Hold on, Mr. Snodgrass. We have some interference there. Why don't you stop the clock, Madam Clerk, while we're pausing so he doesn't have his time used. All right, the interference seems to be gone, so you may proceed. The out-of-town travel holdings are on pages 24 to 28 of the addendum. The underlying district court decision dealt with three categories of unpaid time. They are the incoming travel time, the late cancellation of an April 29th training day, and the outgoing travel time. So incoming travel, training day, outgoing travel. On the incoming travel day, the folks that were working at HCI in Rochester were flying in from different cities for the name representatives. It was New York and Atlanta. But the facts concerning the incoming travel are relatively undisputed. HCI scheduled and paid for the flights and buses. Before traveling, before anybody got on an airplane, the employees signed employment contracts. They passed background checks, reference checks, drug tests. They provided medical records. They completed other onboarding processes. The district court, in its analysis and in its conclusion that that time was not It went on to hold that the workers were not employees at the time of the out-of-town travel coming in because they had not yet stepped foot into the workplace, in this case, the hospital, the Mayo Hospital. The district court also held that even if the workers were employees for purposes of the FLSA, they were not entitled to compensation for the out-of-town travel because they weren't engaged in productive work on the airplane or on the bus. In other words, these were at-the-elbow consultants. They couldn't consult with the employees of Mayo when they were traveling on planes and buses. So according to the district court, it was kind of a twofold analysis. One, because you haven't stepped foot on the hospital floor, you're not an employee. And even if you are an employee, you're not engaged in productive work. There's a tension between that holding and the district court's second holding, which is not subject to appeal by either side. The court held that the workers were employees for the canceled training day on the very next day, April 30th, even though the employees had not yet stepped foot in the hospital. The district court found that the workers were employees that were engaged to wait under the FLSA and found that that time is compensable. No party appeals that ruling. There's no discussion in the district court's order as to this tension as to why they weren't employees because they didn't step foot into the hospitals when they were on an airplane but yet became employees before they set foot in the hospital due to the canceled travel day. The last category of non-compensable time is outgoing, the outgoing travel day. After several weeks of work, the project tapered off. The employees flew home by HCI. And there's not an explanation in the court's opinion as to why this time would not really be compensable. So with those holdings in mind, I wanted to kind of get to the crux right away as to the two main points. One is, were these workers at the time they were traveling, were they employees for purposes of the FLSA? And the answer to that is clearly and unequivocally yes. They were entitled to their compensation, just like they were entitled to compensation for their canceled travel day, they were entitled to compensation for the time spent engaging in out-of-town travel. The statutory and regulatory analysis is kind of simple here. Under the FLSA, there's not a definition of work. There's not a definition of employee. There's a definition of employee, and that's 29 U.S.C. 203G. And to be employed under the FLSA, the hook is work, work activities. Specifically, you are employed under the FLSA if you are suffered or permitted to work. Now, the FLSA does not define work. However, the United States Department of Labor, in 1961 regulations, set forth all kinds of regulations detailing what is or is not work, including travel regulations. And so the regulations that describe what is work are in the section entitled hours worked. It's 29 CFR 785.1 to 785.50. These regulations that set forth in the first one say they are the principles for determining what constitutes working time. And so the specific regulations that relate to travel time start at 785.33, and those are the principles that determine whether or not time spent traveling is working time. And it depends on the kind of travel involved. And here, in this case, the employees contend that this is definitely working time under 785.39, the travel away from home community regulation. The plain text of the regulation is very clear. It says that travel that keeps an employee away from home overnight is travel away from home. Travel away from home is clearly work time when it cuts across the employee's work day. And so that is the issue here. Basically, the district court found that these folks were not employees because, well, it didn't really have, the district court did not really have authority citing for the notion that they weren't employees. But that doesn't, what matters under the FLSA is whether or not you're employed by the suffering or permitting to work. And what is work is determined by the regulations. These folks were temporary employees. They worked for several weeks at one project. But they were entitled to out-of-town travel just like any other employee is entitled to out-of-town overnight travel. And there shouldn't be an exception for that. What we've cited in our reply brief was a Wage and Hour Division USDOL opinion letter that came out after we filed our initial brief. And that case had, that opinion letter addressed facts that were pretty similar to the facts that we are addressing here. And in that case, in that opinion letter, the employee had paid for and arranged for travel just like is in this case. In that opinion letter, the workers were construction workers or laborers who could not engage in productive work when they were traveling because they were in cars and trucks. And the Wage and Hour Division of the USDOL found that that out-of-town travel was compensable time when it cut across the employee's normal work day. It would be bad precedent for this court to allow an employer to define whatever it considers to be the period of employment to evade the hours worked regulation. You often see an employer, for example, say that, you know, I consider this person to be an independent contractor and not an employee. Therefore, I don't owe that person any overtime. Well, of course, the employer's designation or belief as to who is an employee and when they were employed is not controlling. What is controlling is what they were doing and how that applies to the hours worked regulations. And in this case, there's no doubt that these folks were employees, non-exempt employees. They engaged in out-of-town travel scheduled and arranged for by the employer. And that time should be compensable. It's a really a straightforward analysis. Another way of thinking about this is picture, for example, your typical Donning and Doffing case, which have been up and down to the Supreme Court several times. But where the workers are putting on clothing and protective equipment and sanitary equipment for a half hour before a shift and then cleaning and washing the equipment and sharpening knives after the shift. The employer cannot simply say, I only consider you at will employee to be employed at 9 o'clock and I only consider you to be employed until 4 o'clock. And I don't consider you to be an employee at the front end or the back end of that. Well, that's not how the regulatory scheme works. It depends on what the activities were, not what the employer believed. And here, the activities at issue squarely fall within the home away from travel regulation. The second piece of this, the secondary opinion of the district court was whether or not the workers had to be engaged in a productive work time at the time of the overnight travel. And the answer, again, is clearly no. The regulation itself states it applies to non-working days and certainly does not say that there has to be productive work engaged in. In fact, there is a specific regulation for work performed while traveling, 29 CFR 785.41. The district court's decision that no productive work or productive work had to be engaged in it before it becomes compensable, it would render that whole regulation superfluous. The third circuit, as we reflected in our reply brief, 657 Fed Appendix 101 has said, quote, FOSA travel regulation does not require an employee to perform any additional tasks during the course of travel in order for the time to be compensable, unquote. There's also a series of opinion letters that say out of town travel regulations, they apply to everyone, not simply occupations where you can work while traveling. And those are set forth in our reply brief on page 6. And with that, I'll remain my, reserving my remaining time to argue on rebuttal. Very well. Thank you for your argument. Ms. Deason, we'll hear from you. Thank you, your honors. May it please the court. Well, so first, I think I'll clarify Mr. Snodgrass's characterization of the district court's opinion. Because Judge Magnuson did not hold that the appellants were not employees because they didn't perform productive work. I don't see that in the judge's opinion. And further, there is no holding that the time that is at issue wasn't compensable because it wasn't productive. There's no dispute between either party that the plaintiffs didn't do any productive work on the airplane. They were at liberty to read books, text their friends, watch a movie, whatever they desired. What the court did find is that because of the plain language of the Fair Labor Standards Act regulations, since the passage of the Portal to Portal Act, this time was not compensable. And the regulation that Appellants Council references, the travel away from the home community regulation, what I like to call the business trip regulation, 785.39, tells us travel that keeps an employee away from home overnight is travel away from home. Pretty straightforward. Travel away from home is clearly work time when it cuts across the employee's work day. The district court here pointed out, quite simply, that there was no work day because the job had not begun. The employees had not been told when the work would begin, other than to show up to orientation the day after the travel. There was no orientation on the day of the travel. There was no work to be done on the day of the travel. They hadn't even learned the job yet. The job started the next day. Although, as Mr. Snodgrass pointed out, the orientation actually occurred a day later. There were no duties to substitute because, as the regulation tells us, which Judge Magnuson did point out in his opinion, the regulation says the employee is simply substituting travel for other duties when the employee is traveling away from their home community during their work day. Well, here there were no duties to substitute. As we all agree, there was no productive work happening because the job had yet to begin. The job, the productive work itself, is training doctors and nurses how to use software at the Mayo Clinic. When the travel is happening, the employees are not even in Rochester yet, much less do they know what the job is. They haven't gone through orientation. They haven't arrived at the clinic. And they haven't begun the work. So there were no duties that the travel was substituted for. The regulation goes on beyond what counsel has described to tell us that that travel needs to cut across the employee's regular work schedule. So if an employee works from 9 to 5, travel that happens from 9 to 5 is compensable travel. But travel outside of 9 to 5 under the Portal to Portal Act is not compensable. The core function of that regulation is exactly the language that Judge Magnuson pointed to and relied upon. This substituting travel for duties feature is what makes this regulation the business trip regulation. An employee that is regularly employed in an ordinary workplace who takes a trip away from that ordinary workplace for their job, and they get compensated because the time is working time during their regular work schedule. It doesn't fit with the situation that we have here factually. And the judge is right to point out that this is a bit of a unique situation factually because there were no working days. There were no non-working days. There was no schedule yet because the job hadn't started yet. So we don't know what the 9 to 5 is to draw an analogy in this regulation. It's a regulation that simply doesn't fit. Although, honestly, even if it did, both of the named plaintiffs worked shifts that did not clearly overlap with the travel that they undertook. And we describe that in our brief. I'll also note that the district court below found that the work begun, not when the productive work begun, but when there was compensable time at issue. And I think that's a really critical feature here. As you all probably saw in Judge Magnuson's opinion, he did find that the time spent waiting to be engaged during the canceled orientation day, the following day after the initial travel, was compensable time. And that tells us that it's not based on the productive nature of the activities to the district court, which is an accurate reflection, in my opinion, of what the Portal to Portal Act tells us. It's based on how intrinsic the activities are to the principal activity that the employee is engaged in. And the court went to great lengths to describe his conclusion, right one, that the travel is not intrinsically related to the principal activity of the work. That doesn't mean it has to be productive. It means that the Portal to Portal Act tells us that preliminary and post-preliminary activities are only compensable time. It's only compensable work if those activities are intrinsically related to the principal activity that the employee is engaged to perform. And in this case, they simply were not. With that, I think I will shift to the personal jurisdiction issue, if I may. Because there's a key feature here to this dispute on appeal, and that is that appellants have confused general and specific personal jurisdiction. And I think it's worth discussing, if we may. General personal jurisdiction only arises when a corporate defendant is at home in the state. We know that from the Daimler-Bauman case out of the Supreme Court in 2014. That is not the case here. HCI is headquartered in Florida. HCI's principal place of business is in Florida. HCI does not have anything near continuous and systematic contacts with Minnesota. The company's business has touched Minnesota three times for three installments of the project at the Mayo Clinic. The Bristol-Myers case, which is discussed at length in the briefing, has been broadly applied to FLSA collective actions like this in this circuit. District courts in this circuit, in addition to Judge Magnuson's decision, have applied Bristol-Myers in the FLSA context. In the most recent, the past year, we've seen the Murphy case in March 2020, the White case in April 2020, and I wish I could pronounce the name, but I'm not sure, the Hoddap case in December 2020. In White, notably, the defendant there operated 39 restaurants in that state, and there was still no general personal jurisdiction over the defendant. The defendant in the Hoddap case operated 56 bank branches in the state, and the court still found no general personal jurisdiction over the defendant. Despite that the burden is on a plaintiff to prove personal jurisdiction exists, the appellant here raises no argument that, in fact, HCI is at home in Minnesota and that the district court has general jurisdiction over the plaintiff's claims. Instead, they claim that the district court can extend its specific personal jurisdiction over HCI not just to Minnesota-based claims, but to claims that arise entirely outside of Minnesota, despite that HCI is not at home here in Minnesota. But, of course, that describes an exercise of general personal jurisdiction, not specific personal jurisdiction, and the FLSA does not authorize nationwide service of process. So the personal jurisdiction of the court over defendants in FLSA claims extends only as far as the state's long-arm statute. Now, here, this circuit has held that the Minnesota long-arm statute extends only as far as the Constitution allows, such that the only issue is whether the exercise of personal jurisdiction comports with due process. We know that from the Federated Mutual Insurance Company coming out of your circuit in 2019. The court in Myers v. Casino Queen instructed that due process permits the exercise of specific jurisdiction when the defendant purposefully directs its activities at residence of the forum state and the litigation results from alleged injuries that arise out of or relate to those activities in the forum state. That's out of the Eighth Circuit in 2012, Myers v. Casino Queen. That precise reasoning resulted in the rationale in Roy v. FedEx, another case extending Bristol-Myers in the FLSA context. It distinguished claims that were brought by the same plaintiff, finding personal jurisdiction over some claims, specific personal jurisdiction over some claims, but not all claims. That's the District of Massachusetts in 2018. And yet here, appellants are trying to conflate that specific jurisdiction with the broader concept of general personal jurisdiction, which is going to be a violation of defendants' right to due process. The Supreme Court in Thowman told us that such an exorbitant exercise of all-purpose jurisdiction would scarcely permit out-of-state defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit. That is precisely what appellants have asked for here. And that core due process issue brings me nicely to the waiver issue, which I think is also worth noting. HCI here did not waive its right to contest personal jurisdiction. The affirmative defense that HCI raised in its answer spoke directly to due process, and due process is at the core of how the Eighth Circuit, with respect to Minnesota's long-arm statute, interprets and extends where its specific personal jurisdiction applies. And for that reason, there is no waiver here of the personal jurisdiction argument. And I'll reserve the remainder of my time, but I don't think I get to do that, so I think I'll stop there. So going back to the first issue, what do you say is the source of law that determines whether these people were employees at the time they were traveling to Minnesota at the outset? The source of law, Your Honor, would be the definition of work under the Fair Labor Standards Act and how it is interpreted through the FLSA regulations as amended by the Portal to Portal Act. What work is is the time when compensable time is performed. We know what compensable time is because of those regulations. The Donning and Doffing example is an interesting one because the Portal to Portal Act tells us in great detail when those types of preliminary and post-preliminary activities are compensable, and by nature... But isn't the Portal to Portal Act defining when those activities are compensable for employees? And the question here is whether these people were employees at all. So query whether the Portal to Portal Act and the definition of intrinsically related is the right standard here, or whether we have to step back from that and say whether they were employees in the first place. So how do we decide that? We decide that by determining what work means in to employ. To employ under the FLSA is to suffer or permit to work. And so in order to understand whether someone is suffering or permitted to work, we need to know what they're doing and whether it's work. And that's straight back to those regulations that define compensable time. And that's the analysis that the district court undertook, looking both to those regulations to determine whether there is compensable time at issue, first to see if there is work at issue, since this was the beginning of the relationship between the parties, and then to see if there was compensable time at issue. And the court found in the first instance that in the initial travel trip, the employment had not yet begun because compensable work had not yet begun. And on the next day for the orientation, by then the court was convinced that compensable work had begun and that employment had begun under the same definitions of what is compensable time. All right. Thank you. Thank you. Mr. Snodgrass, we'll hear from you and Rubello. Thank you. Clearly, I don't think, well, we agree with opposing counsel that, yes, the definition of when they were employed is based on the FLSA. There is no definition of work under the FLSA, but there is the two-sufferer permit under the definition of the word employed. Work, I agree with opposing counsel, is defined by the regulations. There's only nine travel time regulations, and they specifically address the Portal-to-Portal Act. They start at 785.33. The Portal-to-Portal Act does not apply here because the Portal-to-Portal Act deals with ingress to egress on a same working day within a plant. If you look at what the Portal-to-Portal Act sprung out of, it has nothing to do with overnight travel, which is a specific regulation that we're dealing with here. Of course, the important thing is, even if somehow you would ignore the what is work and say they weren't employees until they stepped on the floor, they certainly were employees for the purposes of the return travel. I mean, how could they not be entitled to return travel time? They were W-2 employees under any definition, any imagination, any stretch of the imagination. What if the employment ended before they left? Under your new job, you're not still employed by the former employer, right? I mean, at least in some scenarios. Moving to a new job, the travel in between isn't necessarily employment with the first employer. So why were they still employed here? Go ahead. Why were they still employed on the return trip? Right. It's the same statutory analysis that we talked about. Employee under the FLSA looks at the activities as set forth in the regulation. When you said they're not employees anymore, I would say, well, who says that? The HR person for the company? Sure, but that's not what the analysis is. The statutory analysis is, let's see what they were doing. What activities were they doing? Were they traveling away from home after they became employees? Yes. And so then no question on that return travel, they should be entitled to compensation. And the district court did not even address return travel in its opinion. As it relates to... I got 22 seconds. I just wanted to update the court. The Bristol-Myers-Squibb issue is a burgeoning issue. The parties did correctly note that the First Circuit and the Sixth Circuit are considering whether Bristol-Myers-Squibb should apply to the FLSA. The issue is also in the Third Circuit, Fisher v. FedEx, case number 21, 1684. These four cases now, including this one, that could potentially address the application of BMS to the FLSA are coming up at the same time. The majority at the district court level right now is that BMS does not apply to FLSA collective actions. There's an April 20, 2021 Southern District of Ohio decision, 2021 Westlaw 1572795, that collects the cases and addresses the majority position of the district court levels. With that, I realize I'm out of time, and I thank the court for just letting me kind of update the court on where the law is on that issue. What about the footnote in your opening brief on this question? What footnote, Your Honor? I'm trying to find it here. Okay. I thought you had a footnote that said this was not an issue in the appeal. Well, yes and no. Right now. Do you know the footnote I'm referring to? I don't off the top of my head, but maybe this is the framing of it. We had, and as opposing counsel noted, we had argued that under Rule 12H, they never set forth a personal jurisdiction defense in the answer, and therefore it's waived, and therefore the court does not need to get to BMS analysis if it finds a Rule 12H waiver. I'm referring to footnote six on page 21 of your brief, which says application of BMS to FLSA collective actions is not addressed by this appeal. That's what I'm referring to. We went with the waiver issue. Defendants addressed BMS extensively. We addressed it on reply as well. But in your opening brief, I take it you waived it. Is that what the footnote means?  We relied on the waiver. That's what I thought. Maybe it's not really an issue in this case. It comes down to the waiver point, as you briefed it. Correct. All right. Thank you. Thank you, Your Honor. Thank you to both counsel. The case is submitted, and the court will file an opinion in due course.